1824.

Lamborn
vs
Watson.

JUNE.

## LAMBORN vs. WATSON.

A fi fa. on a judgment obtained by B against L, was placed in the hands of M, a sheriff, and by him laid upon the land of L, who, at the sale, perceiving that it would not sell for its real value at that time, entered into an agreement with W that he should bid it off for and upon L's account, to enable him thereby to gain time to raise the money .W did bid off the land at less than its value, but conceiving the design of turning the purchase to his advantage, entered into a fraudulent agreement with M to retain it for their mutual benefit. and refused to relinquish it to L, who had made an arrangement with B. for payment of the debt. For this violation of his agreement, L brought an action on the case, on the verbal agreement, against W. who rested his defence on the statute of frauds. Held, that the action, not being founded on deceit, misrepresentation or fraud, is within the statute of frauds

Courts of law as well as of equity have cognizance of fraud, but courts of law relieve against it negatively, by inquiring into the circumstances,and not permitting plaintiffs to recover in actions brought on deeds or contracts fraudulently obtained, and thus virtually annulling such deeds or contracts as against the fraudulent parties. But they cannot entertain actions upon verbal contracts within the statute on the ground of fraud in refusing to perform them.

APPEAL from Harford county court. This was an action on the case, and the declaration alleged, that B. Bond had obtained sundry judgments against the plaintiff, (now appellant,) upon which writs of fieri facias had been issued and placed in the hands of Jason Moore, then sheriff of the county, who in pursuance thereof had levied the same upon the plaintiff's property, and had advertised the same to be sold on the 19th of August 1817, on which day the plaintiff, with sundry persons attended; when in consideration that the property would not sell for its real value at that time, and to prevent its being sacrificed, the plaintiff did then enter into an agreement and understanding with the defendant, (now appellee,) to bid for the property for and upon account of the plaintiff, that he might have an opportunity to raise the money to pay the executions for which the property was to be sold; and in consequence of such agreement and understanding between the plaintiff and the defendant, the defendant did bid off the property for the sum of $5000, which was more than sufficient to pay the whole of the executions to Bond, together with all costs, &c. Yet the defendant, not regarding his said agreement and undertaking, but contriving, &c. to defraud the plaintiff, on the said 19th of August aforesaid, and after the said sale, did secretly and fraudulently contrive, collude, and agree with Moore, the sheriff, to deprive the plaintiff of any benefit from the sale of the property, and to defraud him out of the same, he the defendant did then agree and determine with Moore to retain the property by virtue of the sale, for their mutual benefit and advantage, and in consequence thereof the defendant absolutely refused to relinquish the property to the plaintiff, although, &c. That,

the plaintiff was ready and willing to pay the money due upon the executions, &c. yet, &c. The defendant pleaded not guilty, upon which issue was joined. At the trial the plaintiff proved to the jury the facts stated in his declaration. And the defendant proved that the property mentioned in the declaration was real estate, and that the understandings and agreements in the declaration stated had relation only to real estate; and that said understandings and agreements were not, nor was either of them, reduced to writing, nor any memorandum or other writing made of the same, nor was there any money paid for or on account of the same or the said land by the plaintiff, or by any one else for him, to the defendant. The defendant then prayed the opinion and direction of the court to the jury, that if they believed said evidence, the plaintiff was not entitled to recover. Which opinion, the court [*Hanson* and *Ward*, A. J.] gave to the jury. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, and STEPHEN, J.

*Mitchell*, for the Appellant, stated, that the court below gave the direction to the jury, as prayed for by the defendant, on the ground that the agreement stated in the declaration and proved, was within the statute of frauds. He contended, that although it was a parol promise, it was valid, there being fraud alleged. He cited *The King vs. Boston*, 4 *East*, 577, (note b.) *Countess of Mountacuo vs. Maxwell*, 1 *P. Wms.* 618. 1 *Stra.* 236, S. C. *Rob. on Frauds*, 195. 9 *Mod.* 36. *Crosbie vs. M'Doual*, 13 *Ves.* 154. That the consideration in the agreement was sufficient if it was for the benefit of the plaintiff, and was not prejudicial to the defendant; and that where a person undertakes to act in a trust he is answerable. He cited 1 *Com. Dig.* tit. *Action*, &c. (B 9.) 200. *Kirby vs. Coles*, *Cro. Eliz.* 137. That the evidence was admitted, and the agreement was proved as stated in the declaration; which was as certain as if the agreement had been in writing, or had been admitted in chancery by the defendant's answer, where the statute was never noticed, although insisted on by the defendant. That the statute of frauds was a statute of evidence, he referred to *Rob. on Frauds*,

1824.

Lamborn
vs
Watson

87, 88. That where the defendant dispenses with the statute of frauds, and admits the agreement, it is established.

*R. Johnson*, for the Appellee, contended, that the declaration contained no averment that the defendant solicited the plaintiff to become the purchaser of the property for him. Nor was there any averment of a fraud intended to be perpetrated at the time of the agreement. That it was nothing more than the violation of contract, without any fraudulent motive. That as the agreement related to lands, it ought to have been in writing, and not being so, was within the statute of frauds. He cited 1 *Com. Cont.* 74. 1 *Bac. Ab.* tit. *Agreement*, (C) 115. That the statute of frauds is never pleaded, but is offered in evidence, and that it was with a view of relying on the statute that the defendant offered the evidence he did. That there was no averment in the declaration that the plaintiff had paid the money to the defendant, or that he was ready and willing, and offered to pay the executions. He cited 1 *Chitty's Plead.* 314, 315. 1 *Saund.* 320, (*note* 4.) 5 *Com. Dig.* tit. *Pleader*, (C 51,) 356.

*Mitchell*, in reply, contended, that no averment in the declaration of an offer to pay was necessary; that being ready to pay was equivalent to an offer to perform. He cited 1 *Chitty's Plead.* 318. That in *The King vs. Boston*, 4 *East*, 576, the fraud was after the agreement, and was similar to the case before the court. He referred to *Newl. on Cont.* 55. That wherever fraud enters into the transaction of a parol agreement, the statute of frauds could not be pleaded. He cited *Rob. on Frauds*, 130, and *Davis vs. Walsh*, in this court, at December term 1808.

The opinion of the court was delivered by

Buchanan, Ch. J. We must take this case, as we find it, which, as presented by the declaration, and bill of exceptions taken at the trial, is substantially this: Sundry writs of *fieri facias* being sued out, upon judgments obtained by *Buckler Bond* against *Daniel Lamborn*, the plaintiff, and placed in the hands of *Jason Moore*, the sheriff of *Harford* county, he levied them upon the land and real estate of *Lamborn*, who attended at the time and place assigned by the sheriff in his advertisement for the sale of the property; and perceiving that it would not sell for its

real value at that time, entered into an agreement with *John Watson*, the defendant, that he should bid it off, for and upon his, *Lamborn's*, account, to enable him thereby to gain time, to raise the money to satisfy the executions.

*Watson* did accordingly bid off the property at less than its value, but afterwards, conceiving the design of turning the originally pretended purchase to his advantage. entered into a fraudulent engagement with *Moore*, the sheriff, to retain it for their mutual benefit, and refused to relinquish it to *Lamborn*, who had made an arrangement with *Bond*, the creditor at whose instance it was seized; for the payment of the whole amount due to him, with all the accruing costs and charges.

For that violation by *Watson* of his agreement this suit was brought, and he rests his defence on the statute of frauds, which probably generates as many frauds as it prevents. The expedient resorted to by the plaintiff to prevent an actual sale, in order to gain time, may not be altogether free from exception; but looking at this case, as it appears in the record, more disgraceful conduct than that both of the defendant, and *Moore* the sheriff, has perhaps seldom found its way into a court of justice, and the defence set up is entirely of a piece with it; yet as the case is presented, we are constrained to sustain that defence. The action is not founded on deceit, misrepresentation or fraud, practised by the defendant, by which the plaintiff was tricked into a false confidence, and seduced into a contract by which he has lost his property; but on a verbal agreement, respecting the sale of lands, not sought for, or moving from the defendant, but procured by the plaintiff himself for his own purposes, on which, without overturning the statute of frauds, an action at law will not lie, being clearly within the statute, from the operation of which the subsequent abuse by the defendant, in collusion with the sheriff, of the confidence reposed in him, cannot have the effect to rescue it. If the plaintiff could be permitted to recover on this agreement, there is no case in which the statute could prevail, and it would become a dead letter.

Courts of law, as well as of equity, have cognizance of fraud; but courts of law relieve against it negatively, by inquiring into the circumstances, and not permitting plaintiffs to recover in actions brought on deeds or contracts

But they cannot entertain actions upon verbal contracts within the statute, on the ground of fraud, in refusing to perform them; if they could, it would be to permit a plaintiff, in the shape of an action on the contract, to recover in damages, not for the breach of the contract as such, but for a fraud subsequently conceived, and on which the action was not founded, (as is attempted in this case,) which would be to annul the statute in relation to such contract.

JUDGMENT AFFIRMED.